Louisville & Nashville R. R. Co. v. Literary Society of St. Rose, &c.

CASE 74—PETITIONS ORDINARY, TRANSFERRED TO EQUITY
—APRIL 2.

91  395
f135  177

# Louisville & Nashville Railroad Company v. Literary Society of St. Rose, &c.

## APPEAL FROM WASHINGTON CIRCUIT COURT.

1. AN OBLIGATION SIGNED BY THE CHIEF OFFICER OF A CORPORATION, and purporting to be the obligation of the corporation, must be held to have been properly executed, its execution by the corporation not being questioned by pleading.

2. SUBSCRIPTION BY CORPORATION TO AID IN BUILDING RAILROAD NOT ULTRA VIRES.—Corporations have such powers as are expressly given them by their charters, or such as, by fair implication, are necessary to the execution of their object.

   An incorporated literary institution, which, by its charter, has power to contract, and buy and sell real and personal property for the purpose of "sustaining and carrying on said institution of learning, and not otherwise," and which, under the power thus conferred, owns and operates a large and valuable farm, has, by fair implication, the power to do any thing reasonably calculated to add to the value of its property, or to the value of the large industry thus created. Therefore, a subscription by the corporation to aid in building a railroad, which was highly beneficial to the institution in various ways, and added largely to the value of its property, was not *ultra vires*.

3. CONSIDERATION FOR CONTRACT—PLEADING.—While a written obligation for the payment of money imports, *prima facie*, a valuable consideration, yet when the obligee, by pleading, sets out the consideration upon which he claims the contract is based, the presumption of a sufficient consideration ceases to exist, and the burden rests upon him to prove the consideration alleged.

4. SUBSCRIPTION OBTAINED BY MISREPRESENTATION.—As the defendants were misled as to the object for which the money subscribed by them was being obtained, and the real consideration was not presented to or acted on by them, the subscriptions were obtained by misrepresentations, and can not, therefore, be enforced.

W. C. McCHORD FOR APPELLANT.

1. Appellees were not misled as to the object for which the money subscribed was to be used.

2. The obligation sued on is that of the corporation, and not of the

individual, signing it.  (Pack v. White, 78 Ky., 243; Trask v. Roberts, 1 B. M., 201; Yowell v. Dodd, 3 Bush, 582.)

3. The contract is not *ultra vires*.  (Germantown Farmers' Mut. Ins. Co. v. Dhein, 43 Wis., 420; Rock River Bank v. Sherwood, 10 Ind., 230; Farmers and Traders' Bank v. Harrison, 57 Mo.; Eastern Counties R. Co. v. Hawkins, 5 H. L. Cases, 331, 373; Carey v. Cleveland & Toledo R. Co., 29 Barb., 35; Converse v. Norwich, 33 Conn., 166; Waterman on Corporations, vol. 1, pages 604, 605. 606; Oil Creek, &c., R. Co. v. Pa. Trans. Co., 83 Pa. St., 160; Perkins v. Portland, &c., R. Co., 47 Me., 573; Worrell v. First Pres. Church, 23 N. J. Eq., 96.)

4. There was a valuable consideration for the contract.  (Kent's Comm., vol. 2, side page 465.)

JOHN W. LEWIS OF COUNSEL ON SAME SIDE.

J. W. S. CLEMENTS FOR APPELLEES.

1. There was no consideration for the contract sued on.  Such donations have never been upheld, except where they were made to strictly charitable institutions.  (8 B. M., 68; 10 Bush, 238.)

2. While ordinarily a written contract imports a valuation consideration, yet if the obligee alleges specially what the consideration was, he is confined to the consideration alleged, and, if it is not sufficient, the contract can not be enforced.  (Noe v. Keen, &c., MS. Op., April 30, 1884; Bullitt v. Ralston, 1 A. K. Mar., 331; Steadman v. Guthrie, &c., 4 Met., 152; Jerome v. Whitney, 7 John., 321.)

3. There was such suppression of truth in obtaining the writings sued on as amounts to actual fraud.  (Talbot v. Todd, 5 Dana, 196; 10 Bush, 82; 1 Bibb., 183.)

4. The contracts are *ultra vires*.  (Angell & Ames on Corp., 323; 21 How., 443.)

CHIEF JUSTICE HOLT DELIVERED THE OPINION OF THE COURT.

The Literary Society of St Rose and the Literary Society of St. Catharine are corporations for educational purposes existing in or near the town of Springfield, in Washington county. They have power to contract and buy and sell real and personal property for the purpose of "sustaining and carrying on said institution of learning, and not otherwise." Each owns and operates a farm of about a thousand acres

of very considerable value, thus creating a large industry in the way of supplies furnished to them, and they, in turn, furnishing to others.

A corporation, known as the Middle Division of the Cumberland and Ohio Railroad Company, existed for the purpose of building a railroad from Bardstown, in an adjoining county, to Springfield. It was a home company; that is, its officers were citizens of Washington county, and it was, at least at the outset, a local enterprise. It entered into a contract with the appellant, the Louisville and Nashville Railroad Company, by which it was to build the road, the former furnishing the right of way, and paying the latter a certain sum of money. This had to be raised by donation or taxation in a taxing district that the Legislature had created in Washington county, embracing the town of Springfield. The local company had little means, and the appellant, by a secret arrangement with its president, agreed to furnish the money, when necessary, to pay for the right of way.

By the contract the road, when built, was to become a part of the appellant's system, and it is quite evident that it was really "the power behind the throne," and the interested party in the road from the time it agreed to build it.

The contract only required it to construct the road to some point within the town limits of Springfield. It did not fix the location of the depot at that place. The people of the taxing district, including the officers of the appellee institutions, supposed the right of way through the county to Springfield had to be furnished either through donation or by their paying

for it. The appellant determined to locate the depot at Springfield, at the crossing of the Bardstown turnpike, near the western limit of the town. When this became known to the officers of the local company they, and perhaps others, applied to the appellant to extend the road, and locate the depot at the crossing of the Lebanon turnpike, which was more convenient to the town, but at least a half a mile farther from the appellee institutions than the location that had been selected. The appellant finally agreed to the change, provided the right of way through the town and the depot grounds were furnished for the purpose without cost to it.

The local company having no means, the appellant agreed to furnish the money therefor, it to be repaid to it by the local company. The latter thereupon went to work to obtain donations. At this time the entire right of way for the road outside of the town had not been obtained. There is evidence showing that some parties who had proposed to donate it through their lands had declined, and the officers of the appellee institutions, together with others, supposed the money would have to be raised in the locality in some way to pay them. The local company appointed a committee of two of its officers to see the officers of the appellee institutions; and, if posble, get them to make donations to help pay for the right of way through the town and the depot grounds in order to effect the proposed change as to the depot. The committee obtained from St. Rose, through its chief officer, a subscription in writing of five hundred dollars, and from St. Catharine, in the

same way, three hundred dollars. Both were written upon the same sheet of paper, and are, in substance, alike. They provide that the society, "in consideration of the many advantages to accrue to said institution, in order to induce the Middle Division of the Cumberland and Ohio Railroad Company to extend and operate its road from Bardstown to Springfield, and locate its depot at the crossing of the Lebanon pike, in Springfield, hereby agrees and binds itself to pay said company the sum of (five in one agreement and three in the other) hundred dollars when said road is completed and trains pass over same."

These obligations were assigned to the appellant in payment of money advanced by it to obtain the right of way and the depot grounds within the town, and its actions upon them were, upon final hearing, dismissed in the court below for various reasons given by it. Whether all of them are well-founded need not be considered.

The obligation given by the Society of St. Catharine is merely signed by the prioress, who is the chief officer of the institution; but it purports to be the obligation of the society; the face of the instrument shows it was so intended; its execution by the corporation is not questioned by pleading, and the officers of each institution knew of the execution by the chief officer of its respective obligation and assented thereto. They must be held, therefore, to have been *in forma* properly executed.

It is contended, however, that they are void, upon the ground that they are *ultra vires*, or beyond the power and scope of the business of the appellee insti-

tutions.  Corporations derive their powers from their charters.  They are those which are expressly given, or by fair implication are necessary to the execution of their object.  Cases may be found where the officers of a corporation have exceeded their powers, but the corporation, nevertheless, held liable, because the transaction was within the scope of its business, and it had received a benefit from it.  The only trouble arose from a defect of power in the managers.  This case is not within this class, however, because it appears, beyond all doubt, that the change of location as to depot was not to the interest of these institutions.  The building of the road was calculated, however, to be highly beneficial to them, both as furnishing convenient access to them for persons coming and going, and also in furnishing them a means of obtaining their supplies and sending their produce to market.  It was calculated to, and undoubtedly did, add greatly to the value of their properties, and the large industries which their charters had authorized them to create.  It conferred a direct benefit.  The power existed by fair implication to do any thing reasonably calculated to add to this value.  How far this power extended we need not decide.  Certainly, however, if, during a portion of the year, these institutions had been almost inaccessible for the lack of a turnpike or a bridge, a subscription by them to build either would have been valid; and while not authorized to enter into all manner of speculation, yet, in our opinion, a subscription by them to aid the building of this road was not, under all the circumstances, *ultra vires*, and, therefore, void.  The

appellee, however, has seen fit to aver specially in its pleadings the consideration for these obligations. They imported, *prima facie*, a valuable consideration; but the appellant has set out the consideration upon which it claims they were based, and the presumption of a sufficient consideration ceased as soon as it did so. (Steadman v. Guthrie, &c., 4 Met., 152.)

It is averred that they were executed in consideration that the depot was to be changed, and for the purpose of raising money to pay for the right of way and depot grounds for this purpose. This is denied, and it is averred they were obtained by misrepresentation. The appellee having, although unnecessarily, averred a particular consideration, was bound to prove it. The burden then rested upon it. The decided weight of the evidence is, that when the obligations were obtained nothing was said as to any change of depot, and that they were executed with the understanding upon the part of the officers of the appellee institutions that the object was to obtain means to pay for the right of way outside of the town. The testimony, by a decided preponderance, shows that this understanding was created by what those obtaining the subscriptions said at the time. While they may not have intended to thus mislead, yet it had that effect. The officers of the appellee institutions then had no knowledge that a change of depot was under consideration, and the reference in the writings sued upon as to its location, if noticed at the time of their execution, must have been understood as referring merely to the general route of the road. They were misled as to the object for which the money

was being obtained. The real consideration was not presented to or acted on by them.

It is to be presumed these officers would not have given the means of their institutions for a purpose directly opposed to their interests, and that the proposed change would have been so is virtually conceded in argument, and, were it not, the evidence clearly shows it. The decided weight of the testimony is, therefore, fortified by a controlling circumstance, and the claim that the obligations were obtained by misrepresentation, and are, therefore, not enforceable, must be sustained.

Judgment affirmed.