[No. 1405.]

THOMAS A. GEORGE, PLAINTIFF AND APPELLANT, v. THE NEVADA CENTRAL RAILROAD COMPANY, DEFENDANT AND RESPONDENT.

1—RAILROAD CORPORATION—POWERS OF—MANAGEMENT OF—BOARD OF DIRECTORS—GEN. STATS., SEC. 843, CHARTER.—A corporation can exercise no power not granted to it by the legislature. The powers of management granted in this state are delegated to the board of directors and are embraced in Gen. Stats., sec. 843. That power, which is fairly implied, is as much granted as those which are expressed. The charter of a corporation is the measure of its powers, and the enumeration of powers in the charter is an exclusion of all other powers.

2—CORPORATION—CONTRACTS WITH, BOUND BY THE LIMITS OF ITS AUTHORITY.—Every person who enters into a contract with a corporation is bound, at his peril, to take notice of the legal limits of the capacity of such corporation to contract.

3—CORPORATION, ACTS OF IN EXCESS OF AUTHORITY.—If an act of a corporation is in excess of its chartered purposes, such act is outside of the powers delegated to its agent.

4—RAILROAD CORPORATION HAS NO AUTHORITY TO EMPLOY PERSONS TO REPORT ON MINES.—Respondent being authorized by the statute to "construct and maintain a railroad," the employing of persons to make a report upon mines is outside of its purposes and objects, as well as outside the powers which it can delegate to its officers.

5—EMPLOYMENT, CONTRACT OF BY CORPORATION.—When the president of a corporation directs its superintendent to make a contract of employment without authority from the corporation to do so, courts cannot presume that the president was authorized more than the superintendent to do so. (BIGELOW, J., concurring.)

6—FINDING, ABSENCE OF, PRESUMPTION.—If a finding of a fact is necessary to support a judgment and there is no such finding, the appellate court is required to presume that the trial court had in fact found against the existence of such necessary fact. (BIGELOW, J., concurring.)

7—ESTOPPEL—DENIAL OF AGENT'S AUTHORITY—RATIFICATION.— Before the retention of benefits derived from the unauthorized act of an agent can have the effect of estoppel to deny the agent's authority by reason of ratification, it must appear that the principal was in a position to either accept or refuse such benefits as he deemed best. (BIGELOW, J., concurring.)

APPEAL from the District Court, Lander county; *A. L. Fitzgerald*, District Judge.

The facts are sufficiently stated in the opinion.

*David S. Truman*, for Appellant:

There are some rules of law that apply in this case and that are decisive of it:   First—A corporation that claims a certain act to be *ultra vires* must show the same to be such. Second—A contract made by a corporation will not be presumed to be invalid, but it must be shown, unless, possibly, it is a contract that on its face is shown to be *malum per se,* or against public policy.   As to the question of *ultra vires* and the effect here, if any, appellant's position is two-fold: First—That the contract here shown is not *ultra vires.* Second—For the sake of the argument only, admitting that it is, then the doctrine of *ultra vires* constitutes no defense, as the contract on which this action is brought is an executed contract of which the defendant has received the benefit and regarding which plaintiff cannot be placed in *statuo quo ante* and defendant cannot rely on the doctrine of *ultra vires* to an executed contract.

The object of a railroad company must truly be to derive all the revenue it legitimately can from its traffic, or its carriage of freight and passengers for the benefit of its shareholders. As a general proposition this is the only object of its existence; of course, it also operates a benefit to the general public and the commerce of a nation.   In order to accomplish its true end and aim it must have freight and passengers to transport from place to place for hire, or else, failing this, it must stop business, or else do it at a large and continuing loss to its stockholders for a time, and then eventually cease operations entirely.

It will be understood that the report was not made for the railroad company so it could buy the mines, but so it could aid and assist in a sale of the property to some one else and thereby start up the business of mining again at Austin, so it could continue its avocation as a common carrier. The object was not to deal in mines for speculative purposes, but so the defendant could live and continue to transact business.

To increase the traffic of a railroad company is not beyond the charter powers of a railroad, but directly within the same, and a contract made directly for that purpose is not an *ultra vires* contract unless void as against public policy, or *malum per se*, or directly prohibited by the charter.

A contract to have a report on a mine or series of mines showing their condition and value, or showing their prospective value as an investment of money, clearly does not come within either of the above prohibited character of contracts, and unless our statute prohibit the same it is not unlawful, and under our statute this contract is within the charter powers of the defendant. (Gen. Stats., sec. 836.)

The having of a mining report made under the conditions of the defendant at the time for the purpose for which it was made was a legitimate exercise of a power regularly vested in this defendant by its charter, was an act conducive to a legitimate purpose, and the ultimate end and aim of the defendant's incorporation. For the sake of the argument, say that this was an act that could only be held valid under extraordinary circumstances—which is the very utmost that can be said of it—we have fully shown those circumstances to have existed at the time. (Mor. on Corp., sec. 68, ed. of 1882; 19 Am. & Eng. Ency. of Law, p. 815, title "Power to Contract," and note 2 and authorities there cited.)

The contract here was directly within the enumerated powers of the charter; if not, certainly it comes within the implied powers. The court finds that the report was beneficially used in presenting the mining property, etc., to purchasers, and also to the actual purchasers, and, no doubt, it had a marked influence, and formed a very important factor in the sale and in inducing the sale for $300,000.

The sole object of the defendant did not lie in the sale of the mines as such, but it was the resultant benefits to itself therefrom, and that a sale of the mines had to be first made

did not the less render the aim and object of the defendant a legitimate one within the charter powers, *viz.*, its increase of traffic therefrom. The case of *Dupee* v. *Boston Water Power Co.*, 114 Mass. 37–43–64, is a direct authority here, and also *Board of Agriculture* v. *Railway Co.*, 47 Ind. 17 Am. Rep. 702. (*Sherman Center Town Co.* v. *Russell*, 26 Pac. Rep. 715; *Hotel Co.* v. *International Military Encampment Co.* (Ill.), 29 N. E. Rep. 1044; Mor. on Corp., sec. 70; *Old Colony Railway Co.* v. *Evans*, 6 Gray, 25; Mor. on Corp., sec. 103, ed. 1882; 19 Nev. 121; 4 Nev. 20; 113 U. S. 322; 5 Sup. Ct. Rep. 528; 56 Cal. 61–63; 55 Ill. 413; 57 Fed. Rep. 59; 14 Sup. Ct. Rep. 339.)

The second position is, that this being an executed contract on the part of the plaintiff, and the defendant having received the benefit thereof, by and through its duly authorized agents and officers, it is not permitted here to have sustained, as a defense to this action, the doctrine of *ultra vires.* (*Underwood* v. *Newport Lyceum*, 5 B. Mun. 129, 41 Am. Dec. 260; 3 Sup. Ct. Rep. 315; 109 U. S. 522; Mor. on Corp., ed. 1882, sec. 100–107; 47 Ind. 407, 63 N. Y. 62; 55 Ill. 413; Field's *Ultra Vires*, p. 181–190; 18 Pac. Rep. 941, 958; 67 Cal. 127; 9 Col. 11; 13 Pac. Rep. 329; 16 Cal. 256; 6 Hill (N. Y.) 33; 33 Cal. 183; 30 N. Y. 83; 33 Pac. Rep. 544, 772; 51 Fed. Rep. 327; 21 Nev. 481–482.)

The court finds that there were no restrictions placed upon Hinchcliffe's authority as superintendent and general manager by the by-laws of defendant.

The right to make such a contract is the power. The making of it is the exercise of the power. That the contract of employment is for a purpose that does not necessarily arise every day in the business of a railroad company makes no difference with the power to so employ a person when the need for his services arises, and cannot affect the question of the power to so employ. The power was exercised in employing plaintiff to make the report if the power to employ men generally exists or was assumed by the superintendent and acquiesced in by the company, the fact that it was exercised in employing plaintiff cannot affect the case unless such contract is invalid *per se.*

As between a railroad company and third persons the true limit of a railroad agent's authority to bind his company is

the apparent authority with which he is invested. (61 Cal.
338; 73 N. Y. 10; 21 Am. & Eng. R. R. Cases, 64; 108 Pa.
St. 530; 10 Neb. 556; 65 N. Y. 111; 20 Kan. 519; 6 Am. &
Eng. R. R. Cases, 436; 103 Ill. 239; 17 Am. & Eng. Ency. of
Law, 145, sec. 3, and authorities cited; 35 Pac. Rep. 677.)

The scope of authority of a superintendent is laid down in
*Reynolds* v. *Witte*, 13 S. C. 5; 31 Pac. Rep. 771; 18 Nev. 161-
165; *Lee* v. *Pittsburg C. M. Co.*, 56 How. Prac. 376; 17 Am. &
Eng. Ency. of Law, 130; 72 Me. 167; 3 Phil. (Pa.) 447; 17
Am. & Eng. Ency. of Law, 135, title " Officers and Agents."

*Huntington & Rhinelander* (New York), of Counsel; *O. A.
Murdock*, for Respondent:

The only acts proved are those of Hatch, president, and
Hinchcliffe, general superintendent. There is no proof of
any act or acquiescence whatever by anybody else. No rati-
fication by anybody, unless the contract and the use of the
report are the acts of the corporation by virtue of the au-
thority which Hatch and Hinchcliffe had; they are not the
acts of the corporation at all. Neither Hatch nor Hinchcliffe
had any authority to make the contract or to use any report.
First, because such contract or use was outside of the powers
of the corporation itself (*ultra vires*) and, therefore, outside
of the powers of any agent. Second, because whether *ultra
vires* or not it was outside of the powers of the president and
also outside of the power of all officers beneath him.

In seeking to fix a corporation with a contract there are
always two separate and distinct facts to be established:
First—That the contract is in fact the contract of the corpo-
ration. This is a question of agency pure and simple. Sec-
ond—When it is once established that the corporation did in
fact make the contract, then the further question arises, was
it such a contract as the charter allowed the corporation to
make? If it was the matter is ended, the corporation is
liable. If it was not, then the corporation has made a con-
tract which it was forbidden to make, and the question is:
" What is the court going to do about it?" and it is at this
point that the question becomes material whether or not the
contract has been performed. If the contract has not been
performed on either side, it cannot be enforced, and some
courts hold that if it has been performed on one side the

court will enforce it upon the other. This proposition, however, assumes that the contract is in fact the contract of the corporation.

A corporation always acts through its agents, and in determining whether a given act of the agent is binding upon the corporation there is always the question of fact pure and simple whether the agent had authority. When it is determined that the contract *is* in fact the contract of the corporation, then, and not till then, comes the question whether it is such a contract as the corporation had power to make, *i. e.,* the question of *ultra vires,* or not *ultra vires.*

In the case at bar our contention is that the contract made between Hinchcliffe and the plaintiff was not the contract of the corporation. To prove that Hinchcliffe had no authority to make the contract, we show that such a contract was not within the chartered powers of the corporation. Having established this, the plaintiff's case falls to the ground. There is not even a pretense that the board of directors knew anything about it. The question then is whether or not the court will enforce an *ultra vires* contract. (*Munt* v. *Shrewsbury and Chester Railway Co.,* 13 Beav. 1.) For the correctness of the above general statement, see Morawetz on Corp., 2d. ed., secs. 575-6-9, 581, 690.

Appellant takes the further position that respondent received some benefits from the acts performed by appellant, and that therefore respondent is bound to pay appellant. In this appellant assumes that the contract was the contract of the corporation, though *ultra vires.* He further *assumes* that it was the corporation that accepted the performance of his acts; that it was the corporation that received his report and that it was the corporation that used his report. The fact is that the corporation had nothing whatever to do with the report, neither received nor used it.

It is true in certain cases where an agent of a corporation has without authority made a contract in terms in behalf of the corporation, and the other party has performed his side of the contract, and the result of such performance is that money or property has actually come into the possession of the corporation and has been applied by its agent to its *legitimate* uses, it is established that the corporation must either return the money or property so received or pay its

reasonable value; not on the ground that it has contracted to pay for it, but on the ground that it has received and used the property in its own proper and *legitimate* business and must therefore pay for it. It is to be borne in mind, however, that the very foundation of this liability is the receiving and using of the property in the *legitimate business of the corporation.* If the property was received by an agent of the corporation and applied by him to purposes outside of his authority as agent of the corporation, then it was never in fact received by, or used by, the corporation; hence, there can be no liability on the part of the corporation to pay for it. This principle is well set forth in 2 Mor. on Corp., 2d ed., secs. 715, 717, 581.

The contract was not within the power of the corporation itself to make, and was, therefore, not within the power of any agent of the corporation. (Morawetz on Corp., vol 2, sec. 580; *Edwards* v. *Carson Water Co.,* 21 Nev. 485; *Rickord* v. *C. P. R. R. Co.,* 15 Nev. 176; *The Whitman Mg. Co.* v. *Baker,* 3 Nev. 391.)

A railroad corporation is incorporated for the purpose of owning and operating a railroad. The laws of Nevada are explicit upon this point. (Gen. Stats., 835, 836, 843, 851.) These expressly limit a railroad to acts "necessary for the construction, completion and maintenance of such railroad," and they expressly limit the power of its directors to acts "within the object and purposes of such company, and all else that may be deemed needful and proper *within the scope and power of such company.*" This law says that the corporation shall confine itself to railroading. (1 Morawetz on Corp., sec. 363.)

The cases cited below, particularly 19 Nev. 121, put the whole thing in a nut-shell: 13 Beavan, 1; *Alexander* v. *Caldwell,* 83 N. Y. 480; Angell & Ames on Corp., 288, 301; *Davis* v. *Old Colony Railroad,* 131 Mass. 258; *Whittenton Mills* v. *Upton,* 10 Gray, 582, 598; 11 Allen, 65, 72; 21 How. 441, 443; 11 C. B. 775, 811; 7 H. L. 653; 12 Beavan, 339, 352, 353; 7 Hare, 114; 2 Mach. & Gord. 589; 2 Hall & Twells, 201; 18 Q. B. 618; 19 Exch. 55, 84; 5 House of Lords Cases, 331, 371, 373, 381; 2 Macq. 391, 416, 422; 7 H. L. 653; 9 Exch. 224; 21 How. 441; 101 U. S. 71; 130 U. S. 1; 45 Mo. 212; 22 Conn. 1, 16, 17; 39 Pa. St. 347, 340; 130 Ill. 268,

283; 85 Tenn. 703; 139 U. S. 24, 48, 49; 33 N. J. Eq. 155, 161, 163; 68 Me. 43.

The general management of a corporation is vested in its board of directors. (Gen. Stats., 843.) The by-laws of the corporation concerning the powers of the president will be taken judicial notice of by the court. (*Sacalaris* v. *Eureka & Palisade R. R. Co.*, 18 Nev. 155.)

In *Edwards* v. *Carson Water Co.*, 21 Nev. 469, recently decided by this court, it is said, after relating the rights between the trustees and the officers, "before a corporation can be held responsible for the contracts of his officers or its agents, it must affirmatively appear that the officer or agent was authorized to enter into the contract by the company, or that the company received the benefits derived from the transaction." See, also, 73 Iowa, 548; S. C., 34 Am. & Eng. R. R. Cases, 107.

"*Virtute officii*, a president has very little authority to act for his corporation, and can bind it only by such contracts *as plainly come within its most ordinary routine of business.*" (*Bank* v. *Hock*, 89 Pa. St. 324; *Blen* v. *Water Co.*, 20 Cal. 602; *Risley* v. *Railroad Co.*, 1 Hun. 202; 14 Wis. 325; 22 Wis. 194; 65 Cal. 502; 29 Vt. 220; 55 N. W. Rep. 81; 6 Peters, 51, 58; 23 At. Rep. 77; 51 Mo. App. 66; 20 Cal. 602; 5 N. Y. (1 Seld.) 320; 63 Vt. 581; 81 Tex. 306.)

The authority of an agent is created and defined by the instruction of his principal and not by any inherent necessity in the nature of things. A strong case upon this subject is that of *Hawtayne* v. *Bourne*, 7 M. & W. 592.

Neither Hatch nor Hinchcliffe had any authority, and neither was "held out" as having any such authority. The plaintiff had actual knowledge of the purpose of the report, and was charged with the knowledge that ordering the report for such a purpose was outside of the chartered powers of the defendant, and therefore unauthorized. (*Hillyer* v. *The Overman Silver Mg. Co.*, 6 Nev. 51; *Bond* v. *Pontiac R. R. Co.*, 62 Mich. 649; 2 Mor. on Corp., sec. 591; 83 N. Y. 480; *Edwards* v. *Carson Water Co.*, 21 Nev. 469, 483; 3 H. & N. 340; 6 Nev. 51; 4 Nev. 78.)

The ordering of the report was never ratified by respondent. There can be no ratification by silence or by accepting the benefit of the act done, or otherwise, unless there is full

knowledge on the part of the person ratifying of all the essential circumstances of the case. *Vide* cases cited *infra*. (2 Mor. on Corp., 2d ed., sec. 581; 5 Nev. 224; 9 Peters, 629; Angell & Ames on Corp., sec. 304; 7 Nev. 75; 21 Nev. 489, 492.)

The defendant never received nor used this report. A person or corporation cannot be called upon, on the principle of implied contract, to pay for benefits *thrust* upon him, unless he is free to elect whether to accept or to reject the benefit. The plaintiff had fully performed his labors before any benefit came to the railroad. The plaintiff's position was in no way changed by anything the railroad did. (*Yellow Jacket Co.* v. *Stevenson, supra;* 20 Cal. 96; 108 N. Y. 39, 46; 7 Wis. 59; 63 Vt. 581; 131 U. S. 389; 102 U. S. 294; 106 U. S. 487, 503; 107 U. S. 348, 360; 118 U. S. 256, 263, 317, 318; 139 U. S. 24, 60, 61.)

[Respondent here reviews at length the authorities cited by appellant.—REP.]

From the foregoing, inasmuch as the appellant has failed to make out his case, this appeal should be dismissed and the appellant should pay the costs.

*D. S. Truman,* for Appellant, in reply:

In attempting to answer the brief of the defendant in this case, I shall only seek to point out in a somewhat more pertinent manner the points I have rested this contention upon in my opening of the argument. If defendant could consign to oblivion the findings of fact in this case, its contentions might seem more meritorious, but this is hardly possible for it to do. [Here follows nineteen pages of argument and citation to maintain appellant's original position.—REP.]

By the Court, BELKNAP, J.:

This is an action against a railroad corporation, organized under the laws of this state, upon a contract made by its superintendent with the plaintiff that he should report the condition of certain mines in the Reese River mining district. The case was tried by the court without a jury. None of the evidence has been brought here. Findings of fact and conclusions of law were made by the court, and upon these judgment was entered for the defendant.

Among other things, it was found that the principal business of the defendant was the transportation of ores from the Austin mining district, and that this business became unprofitable to the railroad company because of the limited output of the mines. It appeared to some, at least, of the defendant's officers that with a more active management of the mines the traffic of the defendant would be increased. Accordingly the superintendent of the company, Mr. Hinchcliffe, by the authority of Mr. Hatch, the president, employed the plaintiff to examine the mines known as the "Manhattan Mining Property," and to report upon them, in the expectation that a change in their management and control could be brought about. The change took place, but whether through the instrumentality of the report or otherwise, is not clear; but it is found as a fact that the report was beneficially used by Hatch, Hinchcliffe and Elliman, officers of the defendant, and that under the new management of the mines the business of the railroad company materially increased.

The fact was also found that the defendant was vested with the power conferred by the statute of the state relative to railroad corporations, and that neither the president nor secretary was authorized to employ the plaintiff in the service in which he was engaged, and, also, that no action was ever taken by the board of directors in the matter.

Section 843, Gen. Stats., commits the management of railroad corporations to a board of directors. The section is as follows: "The directors of any railroad company heretofore incorporated, or which may be incorporated hereafter, from and after its incorporation or organization, in pursuance of the provisions of this act, or of any law now in force in this state, shall, for and on behalf of such company, manage the affairs thereof, make and execute contracts, of whatever nature or kind, fully and completely to carry out the objects and purposes of such corporation, in such way and manner as they may think proper, and exercise generally the corporate powers of such company; and such directors shall also have full power to make such by-laws as they may think proper, and alter the same from time to time, for the transfer of the stock, and the management of the property and business of the company, of every description whatsoever, within the objects and purposes of such company, and for prescrib-

ing the duties of officers, artificers and employes of said company, and for the appointment of all officers, and all else that by them may be deemed needful and proper, within the scope and power of said company;  *  *  *  *  *provided*, that such by-laws shall be approved by a majority of the stockholders, and shall not be inconsistent or in conflict with the laws of this state, or with the articles of association."

A corporation can exercise no power not granted to it by the legislature.

In *Thomas* v. *Railroad Co.*, 101 U. S. 82, this principle was stated as follows: "We take the general doctrine to be in this country, though there may be exceptional cases and some authority to the contrary, that the powers of corporations organized under legislative statutes are such; and such only, as those statutes confer. Conceding the rule applicable to all statutes, that what is fairly implied is as much granted as what is expressed, it remains that the charter of a corporation is the measure of its powers, and that the enumeration of these powers implies the exclusion of all others." In *Davis* v. *Railroad Co.*, 131 Mass. 259, it is said: "A corporation has power to do such business, only, as it is authorized by its act of incorporation to do, and no other. It is not held out by the government, nor by the stockholders, as authorized to make contracts which are beyond the purposes and scope of its charter. It is not vested with all the capacities of a natural person, or of an ordinary partnership, but with such, only, as its charter confers. If it exceeds its chartered powers, not only may the government take away its charter, but those who have subscribed to its stock may avoid any contract made by the corporation in clear excess of its powers. If it makes a contract manifestly beyond the powers conferred by its charter, and therefore unlawful, a court of chancery, on the application of a stockholder, will restrain the corporation from carrying out the contract; and a court of common law will sustain no action on the contract against the corporation. Every person who enters into a contract with a corporation is bound, at his peril, to take notice of the legal limits of its capacity, especially where, as in this commonwealth, all acts of incorporation are deemed public acts, and every corporation organized under general laws is required to file in the office of the secretary of the

commonwealth a certificate showing the purpose for which the corporation is constituted."

In Morawetz on Private Corporations, the author states the law thus: "The powers possessed by the various agents of a corporation may be limited by the terms of their appointment, or by custom; but the ultimate source of their authority is always the agreement of the shareholders, expressed in their charter or articles of association. It follows, therefore, that, if an act is in excess of the · chartered purposes of a corporation, it will always be outside of the powers delegated to the company's agents, as well as in excess of the corporate powers which the company is authorized by law to exercise. The general rule that a contract made by an agent of a corporation in excess of his powers does not bind the company applies with peculiar force to a contract which is in excess of the charter itself. For a person dealing with a corporation must, at his peril, take notice of the terms of its charter, and of the fact that acts in excess of the charter are necessarily in excess of the authority of the agent performing them." (Section 580.)

The defendant corporation is authorized by the statutes of the state to construct and maintain a railroad. To employ persons to make a report upon mines is outside the purposes and objects of a railroad corporation, and, consequently, outside of the powers delegated to it by any of its officers. Assuming that the road may have been benefited by an increased business, the same reason would be applicable to any other project that would lead to the same result. The question is not whether the business is profitable, but whether it is within the legitimate purposes of the corporation. (Mor. Priv. Corp., sec. 363.) It is claimed that the contract was an executed contract, and that the defendant, having received its benefits, cannot defend upon the ground of want of authority to make it. If the company had received the benefits of the contract, the question we should have to consider would be different from the one now before us. But the fact is that the report never came into the possession of the corporation, as such. Several of its officers used it, but their use was unauthorized, and never ratified by the corporation. The findings of fact on this point show "that the stockholders of said defendant did not personally

know of the making of said contract, and the same was never presented to them for their action, other than said Hatch and Hinchcliffe, and no action was ever taken thereon by the board of directors of said defendant."

Judgment affirmed.

Murphy, C. J.:   I concur.

Bigelow, J., concurring:

The defense in this case rested upon two grounds: First, that the defendant did not employ the plaintiff to perform the services upon which the action is brought; secondly, that the corporation had no legal authority to engage in the business in which the services were rendered, and therefore, if it did employ him, it is not liable upon the contract. In my judgment, there is no necessity to consider the second ground, and in passing upon the sufficiency of the first I think the two should not be confounded. As to the second, I am not prepared to say that the contract was *ultra vires*, it being shown that the change of management of the mines to be brought about by the plaintiff's report was almost indispensable to the continued operation of the defendant's road (see 1 Mor. Priv. Corp., sec. 362, *et seq.*; *Tod* v. *Land Co.*, 57 Fed. 47; *Louisville & N. R. Co.* v. *Literary Soc. of St. Rose*, 91 Ky. 395; *Town Co.* v. *Morris*, 43 Kan. 282); nor, if it were *ultra vires*, would this act, it being a completed contract, constitute any defense to the action (see *State Board of Agriculture* v. *Citizens' St. R. Co.*, 47 Ind. 407; *Linkauf* v. *Lombard*, 137 N. Y. 417). But, as just remarked, I deem it unnecessary to decide this proposition.

Whether the defendant made the contract with the plaintiff involves a question of agency. The defendant, a railroad corporation, was engaged in running a railroad in this state. C. W. Hinchcliffe was general superintendent of the road, and, as such, presumptively clothed with such powers, and only such, as ordinarily belong to the position, and which were sufficient to authorize him to enter into all contracts necessary and proper for the management of the road as railroads are usually managed. As such agent, and without further authority, he made the contract with the plaintiff upon which the action is brought, whereby it was agreed that

the plaintiff should receive $1,000 for making a report upon certain mines. This was clearly outside the ordinary scope of a railroad superintendent's duty, and could only bind the defendant if specially authorized, or subsequently ratified. To be sure, Hinchcliffe was directed by the defendant's president to make the contract, but it was not found that the president had any more authority in the matter than had Hinchcliffe himself; and certainly we cannot presume that he was authorized, by virtue of his office, to make a contract so different from what would ordinarily be included in the duties of a railroad president.

Whether subsequently ratified or not, is, under the circumstances shown here, a question of fact (2 Mor. Priv. Corp., sec. 633; *Nims v. Boys' School*, 160 Mass. 177), upon which there is no finding; and, if necessary to support the judgment, we would be required to presume that the court found that it had not been ratified. The most that can be said of this phase of the case, as it is presented here, is that a certain probative fact is found, to wit, the beneficial use of the report by the defendant's officers in effecting a change of management of the mines, from which the ultimate fact of ratification might perhaps have been found. But there is no finding that such use was any more authorized than was the act of obtaining the report in the first place, and, while the use is evidence from which ratification might be inferred, it does not of itself necessarily constitute ratification.

It was further found that, as a result of the sale of the mines, there was an immediate increase of the traffic and business of the defendant, and of its revenue therefrom; and it is argued that having received this benefit from the sale, which to some extent was furthered by the plaintiff's report, it is now estopped to deny the agent's authority in obtaining the report, or, at least, that it is a ratification of his act in so doing. Aside from others that might be made, it is a sufficient answer to this contention to say that before the retention of benefits derived from the unauthorized act of an agent can have this effect it must appear that the principal was in a position to either accept or refuse the benefit, as he deemed best. (*Cincinnati v. Cameron*, 33 Ohio St. 336, 374; *Zottman v. City of San Francisco*, 20 Cal. 96, 107.) Where such choice exists, it is only just to hold that, as the prin-

cipal has seen fit to accept the benefit of the agent's act, he must also assume the burdens. But it does not exist here. The railroad company was not at liberty to refuse the additional traffic, offered, as it was, by other parties, and having no possible connection with the plaintiff or his report, and therefore its acceptance does not amount to either ratification or estoppel.

I concur in the judgment of affirmance.