## Citizens Life Insurance Company v. Owensboro Savings Bank & Trust Company's Receiver.

(Decided October 23, 1912.)

### Appeal from Daviess Circuit Court.

1. Banks—Act of President—Authority—Power to Subordinate Bank's Lien.—Where a bank's president has for a number of years managed the affairs of the bank, released liens and executed deeds and mortgages on behalf of the bank, with the knowledge and acquiescence of its directors, he has authority on behalf of the bank to unite in a mortgage releasing one lien and subordinating another to the lien of the mortgagee.

2. Banks—Liens—Mortgages—Vendor's Lien—Priority.—Where a bank holds two lien notes on a debtor's property, and procures him to apply to an insurance company for a loan, to discharge one of the notes, and unites in the mortgage for the purpose of releasing its lien as to one of the notes and subordinating to the mortgagee's lien its lien as to the other note, and the application sets out certain taxes and expenses to be paid out of the loan, but it turns out that there are additional taxes which are a lien on the property, and additional expenses, such as the fee for recording the mortgage, and fee for making abstract, which are paid by the local attorney with the knowledge and consent of the bank's president, and the bank accepts the net proceeds of the loan, and applies it on one of the notes, the bank's acceptance is subject to the covenant in the mortgage subordinating its lien, and its lien is inferior to the lien of the mortgagee, both as to the expenses and taxes stated in the application, and the additional expenses and taxes paid with its knowledge and consent.

C. W. WELLS for appellant.

R. A. MILLER, R. S. TODD for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Appellant, Citizens Life Insurance Company, held a mortgage on the property of one H. A. Williams, to secure the payment of certain bonds aggregating the sum

of $4,000. The Owensboro Savings Bank & Trust Company, which subsequently became insolvent and was placed in the hands of T. A. Pedley, Receiver, held a lien on the same property. Appellant brought this action against H. A. Williams and T. A. Pedley, Receiver of the Owensboro Savings Bank & Trust Company, to enforce its lien. The receiver answered and set up the lien of the Owensboro Savings Bank & Trust Company. Upon a final hearing, the chancellor adjudged that a certain part of appellant's lien was inferior to that of the bank. To determine the propriety of the court's ruling, this appeal is prosecuted.

The facts are as follows: The Homestead Land Company and H. A. Williams owned jointly a house and lot on Frederica street in Owensboro. On January 5, 1907, a combination deed and mortgage was executed by which the interest of the Homestead Land Co. was conveyed to H. A. Williams, and a lien was created in favor of the Owensboro Savings Bank & Trust Co. to secure two notes for $4,000 each, due in one and two years after date. The conveyance provided that the lien securing the note due two years after date should be superior to the lien securing the note due one year after date.

During the year 1907, the bank needed cash. The notes executed by Williams were not due. At its instance, Williams and it made written application to appellant for a loan, and requested that appellant accept an assignment of the second lien note for $4,000. This application was rejected. In July, 1907, another written application was made by H. A. Williams to appellant for a loan of $4,000, to be secured by a mortgage. This application was signed by Williams alone, but was made at the instance of the bank. The application stated that there was a purchase money lien against the property for $8,000, evidenced by two notes for $4,000 each "one to be paid by the proceeds of this loan and released, and the other to be made subordinate to this mortgage." The application provided that the sum of $22.40 was to be deducted to pay the expenses of investigating the title at the home office of appellant. To the question as to the taxes unpaid on the property, the answer in the application is: "For 1907, State and county taxes, $40; city, $96." Appellant granted the application, and agreed to make the loan. On August 28, 1907,

Williams executed to appellant bonds aggregating $4,-000, and the mortgage to secure same. The bank united in the mortgage for the purpose of releasing its lien on the property securing the $4,000 note due two years after date, and for the purpose of subordinating to appellant's lien its lien to secure the other note. After reciting the purpose for which the bank joined, the mortgage contained the following: "And the Owensboro Savings Bank & Trust Company, pursuant to a resolution this day adopted by its board of directors, does hereby release and discharge the lien to secure said first mentioned note for $4,000, and subordinates and makes inferior to this mortgage the lien to secure said other note for $4,000." The mortgage was signed and acknowledged by the bank, by its president, and its corporate seal affixed thereto. The bank's president employed a local attorney not only to make the abstract, but to see that the application was made in proper form, and to assist in the consummation of the loan. After the mortgage was executed, acknowledged and delivered, it was placed on record. Appellant, after deducting the sum of $22.40 in accordance with the application, sent to the local attorney a draft for $3,977.60. Appellant directed the attorney to deliver the draft when the mortgage was properly executed, so that the lien thereby created in favor of appellant should be a first and superior lien. A blank was furnished to the attorney, requiring him to certify in substance that there were no other liens on the property superior to the lien created by the mortgage, and that it was first and superior. In order to comply with his instructions, the attorney refused to deliver the draft until the taxes against the property were paid, as well as the expenses incurred, including his fee, and the fee for recording the mortgage. Upon the receipt thereof, Williams endorsed the draft and left it with the attorney, who deposited it in the Owensboro Savings Bank & Trust Co. to his credit, until he could pay the taxes and expenses, and then turn the balance over to the bank. This was pursuant to an understanding between Williams and the bank's president, and the attorney. Upon investigating the amount of taxes due, it was found that the State and county taxes amounted to $45, which were promptly paid. The city collector, however, refused to accept the taxes on the property in question, but required that all taxes as-

sessed against Williams for that year be paid before he would release the lien therefor. After some delay, the bank's president consented that all the city taxes against Williams, amounting to $448.76, be paid out of the fund to the attorney's credit. Thereupon, the attorney, on September 3, 1907, issued checks to the city tax collector for $448.67, to himself for $30, to the county clerk for recording the mortgage, $2, and to the bank for the balance, amounting to $3,451.84, which was credited on the first lien note held by the bank. The bank, through its president, agreed to hold the unpaid balance of said note as the personal obligation of Williams.

The chancellor found that in the two notes held by the bank there was usury amounting to $1,306.25, and that each of the notes should be purged to the extent of one-half thereof. After crediting the superior lien note with half the usury, and with the $3,451.84, the net proceeds of the loan made by appellant, there remained a balance due on that note of $44.27, with interest from September 3, 1907. For this amount, the bank's receiver was adjudged a lien superior to any lien of appellant. Appellant was then adjudged a lien for $3,610.24, credited by certain payments set out in the amended petition, leaving a balance of $3,424.52, with interest from November 30, 1910. For this amount appellant was given a lien inferior to the bank's lien for the sum of $44.27, and superior to the other liens. The above-mentioned sum of $3,610.24 is made up of the net proceeds of the loan received by the bank, viz.: $3,-451.84; $22.40 retained at the home office; State and county taxes amounting to $40, and city taxes amounting to $96. The effect of the judgment was to subordinate the receiver's lien for his entire debt to so much of appellant's lien as embraced the $30 for abstract, $5 for excess of county taxes, $352.76, excess of city taxes over the amount stated in the application, and $2 for recording the mortgage, amounting in all to $389.76. In conformity with this view, the court adjudged the receiver a lien for $3,346.88, with interest from January 5, 1907, being the balance of the inferior note for $4,000, less one-half of the usury. This lien was adjudged inferior to appellant's lien for $3,424.54 ($3,610.24, less credit), but superior to appellant's lien for the balance of its debt, $389.76, for which it was adjudged a lien in-

ferior to all other liens. Of so much of the judgment as adjudges that appellant's lien for all of its debt is inferior to the receiver's lien for $44.27, and of so much of the judgment as adjudges that appellant's lien for $389.76 inferior to the receiver's lien, appellant complains.

The evidence in this case conclusively shows that James H. Parrish, the bank's president, was not only the bank's president in name, but was in fact its chief executive officer. He attended to the making of loans, the execution of deeds and mortgages, and releasing liens, all of which was done for a number of years with the knowledge and acquiescence of the bank and its directors. We, therefore, conclude that the president had full authority to unite the bank with Williams in the execution of the mortgage referred to, as well as full authority to act for the bank with reference to all other matters connected with the transaction. Bartlett Estate Co. v. Frazer, 105 Pacific, 130; Ky. Tobacco Ass'n. v. Ashby, 9 R., 110; L. & N. R. R. Co. v. Literary Society of St. Rose, &c., 91 Ky., 399; Kenton Insurance Co. v. Bowman, 84 Ky., 430; Hurst, &c. v. American Association, Limited, 105 Ky., 793. By the express provisions of the mortgage the bank's lien as to one of the notes is released, while its lien securing the other note is made subordinate to the mortgage. The chancellor seems to have proceeded upon the idea that this provision of the mortgage was not good as to the local attorney's fee, the recording fee and the amount of taxes in excess of those stated in the application, because these items were not embraced in the application. The loan, however, made by appellant was made with the distinct understanding that appellant should have a first lien. If, upon ascertaining that there were additional expenses and additional taxes, and the evidence clearly shows that both the president and cashier knew of these items, the bank did not desire to release its lien to that extent, it should have refused to carry out the transaction. The evidence leaves no doubt that the bank not only accepted the proceeds of the draft, after the additional expenses and taxes paid, with knowledge that they had been paid, but actually agreed that they should be paid. Therefore, having united in the mortgage for the purpose of releasing its lien as to one note, and subordinating its lien as to the other note, its acceptance of the proceeds of draft,

under the circumstances, was just as binding under the covenant contained in the mortgage as if the additional items of expense and additional taxes had been stated in the application. It could not accept and retain the proceeds of the mortgage alone, and at the same time repudiate the agreement under which the proceeds were paid. Not only is this true, but the equity of the case is with appellant, so far as the additional taxes are concerned. Its money was used to pay the taxes, which were a first lien on the property, and, therefore, superior to appellee's lien. Having discharged the taxes, it should be subrogated to the city's lien, rather than have its lien subordinated to that of the bank.

We conclude that appellant's lien was superior to any and all liens adjudged in favor of the plaintiff's receiver.

Judgment reversed, and cause remanded, with directions to enter judgment in conformity with this opinion.