## Bailey v. Bailey.

May 2, 1944.

Woods, Stewart & Nickell and Simeon S. Willis for appellant.

Thomas S. Yates and John T. Diederich for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

Appellant is the executor of the will of his father M. L. Bailey. Appellee, another son, filed suit alleging that deceased had executed and delivered to him the following writing: ''September 26, 1934. Due Robert

Bailey $745 in cash. M. L. Bailey.'' Following the father's death the son made demand of the executor, but payment was refused. He sought judgment for the sum named with interest from date. Answer, following denial, plead no consideration, and that the paper exhibited ''had been materially altered by changing the year from 1936 to 1934,'' making the writing void.

Following proof and instructions the jury found for plaintiff the full sum with interest from date. On appeal it is contended that the evidence does not support the conclusion that there was consideration; (2) that inspection shows that the writing is not the act of M. L. Bailey; (3) that the paper if executed by the father had been so materially altered since delivery as to make it void; (4) the court allowed presentation of incompetent evidence; gave improper instructions on the whole case, and as relating to interest.

The proof shows that M. L. Bailey and appellee lived in Carter County prior to 1920, and both owned farms. Some time in 1920 or 1922 the father undertook to distribute some of his property. In this distribution appellee received a farm of about 76 acres, not far from the place where the father then lived. Whether this was in 1920 or 1922 the son moved to the farm, and lived there about three years when the two traded farms, and the son moved onto the homestead, the father taking possession of the son's farm, renting it at least for some period. Some time in 1934 the father and son agreed to ''rue back;'' the son had made improvements on the father's place while he occupied the premises, and it was agreed that the father should pay him $745 for the improvements, and executed the duebill. He did not go into great detail, but said the improvements consisted of building of fences, cleaning of the land, payment for labor, buying of materials, painting and repairing the house.

It appears from appellee's proof that while the trade was made in 1934 he continued to remain on the place until some time in 1936, due to the fact that his house was not habitable, and he had to ''wait until he got it fixed up.'' At this point in the progress of evidence appellant admitted that the signature on the duebill was genuine. Appellee was positive that the paper was in the same condition at the time of trial as it was when delivered to him, and that there had been

neither alteration nor erasure. He had asked his father to pay the bill, and he said that if he "got able to pay" he would, though it is fairly shown that the father was "living off the income of his property," and had some estate. Other testimony for appellee related to facts showing that the trade had been made, the character of the farms and, in a rather general way, the improvements.

Appellant testified that following his father's death he was at Robert's home one day and he asked him when he was going to pay the $745, and he produced the duebill. He said the date on the paper at that time was 1936, and the figures 1934 were not on the note. He also said that he was familiar with his father's handwriting, and that the signature was genuine and the words "September 26, due Robert Bailey" were also in his handwriting. When he came to analyze figures $745, he thought the "two little ciphers looked different from the way he wrote them." He also said the words "in cash" were not written by the father. He had never heard his father make mention of the duebill or indebtedness, and insisted that Robert moved away from the homestead in November 1936.

I. L. Coburn, son-in-law of deceased, testified that he had seen M. L. Bailey's handwriting "pretty often." He examined the bill and said that the signature was the only portion which was in his handwriting. He had seen the paper shortly after Mr. Bailey's death, and then concluded that it was not genuine. He said the date was then "1936." His analysis only went to the extent of saying (in addition to date) that he had never seen him make little "oo's" like that, and the paper had no "blurs" on it when he first saw it; he noted some erasure between the figures 7 and 4.

There was no effort to show for comparison any handwriting of appellee and there is only an inference that the son had altered the date as to make the note comport with his testimony that the trade had been made in 1934; the change of date under the pleadings was the only issue as to alteration, since it was so specifically charged in answer, and the court (correctly) in his instructions confined that issue to the question of change in the figures 36 to 34. Darraugh v. Denny, 196 Ky. 614, 245 S. W. 152; Correll v. People's Bank, 223 Ky. 115, 3 S. W. (2d) 170. We have complied with request

of appellant that we examine carefully the duebill exhibited, together with a comparison of several letters from father to son which are exhibited. This comparison, made in the light of the explicit admission that M. L. Bailey's signature is genuine, leads to the conclusion that while there are evidences of erasure and alteration of the figures 36 to 34, these appear to be in the hand of the person who signed, and as we believe filled in the face of the note.

The contention that the instructions were erroneous is not well taken. It is argued that they placed the burden on the defendant. The court instructed the jury that if they believed from the evidence that M. L. Bailey wrote and signed the duebill and delivered it to the payee, they should find for plaintiff the face of the note with interest. "Unless you believe from the evidence; that there was no consideration for its execution, (2) or it was materially altered by the change of date, 1936 to 1934 without the knowledge or consent of M. L. Bailey, in either of which events they should find for defendant."

We do not find the instructions subject to the technical criticism; they followed such as have been approved in Tyler v. First Nat. Bank, 150 Ky. 515, 150 S. W. 665; Phoenix Ins. Co. v. McKernan, 100 Ky. 97, 37 S. W. 490; Murrell's Ex'r v. Bohannon, 229 Ky. 13, 16 S. W. (2d) 455. The two issues presented placed the burden on the defendant. Bronston's Adm'r v. Lakes, 135 Ky. 173, 121 S. W. 1021; Correll v. People's Bank, supra.

It is the rule that when it is proven that the signature to a note is genuine, the holder has made a prima facie case that the whole body of the note was the act of the signer. Correll case. It then devolved on defendant to show from the appearance of the note itself, or otherwise, that the note had been materially altered, which would shift the burden to the plaintiff to explain how and when the alteration was made. This broad statement means that the paper must have shown on its face a material change which if made without consent or knowledge of the maker, would release the maker. Harrison v. Pearcy & Coleman, 174 Ky. 485, 192 S. W. 513. In the Bronston case, supra, we held that a written promise imports consideration, but if the holder unnecessarily sets out the consideration he must prove it.

Louisville & N. R. Co. v. Literary Society, 91 Ky. 395, 15 S. W. 1065, and when in defense no consideration is alleged the burden is placed on the one relying on the plea. Bronston case.

Here, although without objection, plaintiff took the burden, a prima facie case was established when the defendant admitted the genuineness of the signature to the bill, and it was not necessary for him to produce proof on either issue, unless and until the defenses were established (Brown Coal Co. v. Madisonville C. S. Agency, 233 Ky. 169, 33 S. W. (2d) 37), and it may be noted that after witnesses for defendant had testified on the issues, one being the executor, a son who was in interest, the plaintiff testified in rebuttal, at least on the issue of material alteration, competent testimony. Further as we view the record, while there was enough proof to carry to the jury the issue of alteration, there was almost a total failure of proof to show want of consideration, hardly enough to constitute our abolished scintilla rule.

Our conclusions thus far make it unnecessary to go to any length in discussing the alleged incompetent evidence. As we read it there was little or no objection to the recitals of what appellee had done by way of improvements, and which did not involve any transaction prior to the making of the note between the father and son. Counsel in brief points to what is considered the incompetent testimony. During appellee's testimony he was asked: "In that contract was there any writing executed between you and your father when you traded?" This question was objected to without insistence for a ruling. Under rules of evidence this objection was waived. Another question was propounded: "(38) I mean when you traded back, did either of you owe the other anything?" This was objected to; the objection overruled with exception. The question in itself was not so objectionable, but the witness answered: "He owed me $745, most of which had been spent on fences, and for cleaning up the place, and for men to gin around at $1.50 a day on the place." Counsel says the same line of questioning and answers continued down to and including question 49, admittedly without further objection.

Counsel for appellee says the failure to object was fatal, since the effect was to raise the question for the

first time in this court. Perhaps counsel is in error, since the rule appears to be that when objection be sustained to a question, and exception noted, "it was not necessary for the defendant to repeat the objection every time the same question was propounded." Cincinnati, N. O. & T. P. R. Co. v. Bennette, 134 Ky. 19, 119 S. W. 181, 182, or as stated in Standard Elkhorn Coal Co. v. Riggs, 219 Ky. 51, 292 S. W. 476, it was unnecessary for counsel to continue to object to the same character of testimony even when given by other witnesses.

As we examine the other questions "down to and including 49," most of them went solely to the execution of the note by the father and its delivery to the son, and it occurs to us that since it was admitted specifically that M. L. Bailey had signed the note, and it was in possession of the appellee, most of the questions and answers, technically incompetent though they be under the Code provision, and their admission erroneous, the errors were harmless and not to the prejudice of the appellant. Admitting that appellee may have been incompetent to testify to the matter of services performed, which constituted the consideration of the note, the issue on this question was not borne out by appellant, who, as we have said, had the burden.

Since it is admitted that the signature to the note was genuine, and our inspection of the original bill demonstrates that any erasure and change in the date were made in the same handwriting, and necessarily with the consent and within the knowledge of the maker, we are not inclined to hold that the incompetent evidence was prejudicial. The case was submitted to a jury under instructions fairly presenting the law on all issues, and we must give weight to its conclusions.

Judgment affirmed.