Filed June 7, 1889.

---◆---

No. 13,761.

## WRIGHT ET AL. *v.* HUGHES, ASSIGNEE, ET AL.

CORPORATION.—*Powers.*—*Right to Borrow Money.*—Where general authority is given a corporation to engage in business, it takes the power, in the absence of charter restraints, as a natural person enjoys it, with all its incidents, and may borrow money to attain its legitimate objects, precisely as an individual, and bind itself by any form of obligation not forbidden.

SAME.—*Insurance Company.*—*Borrowing Money.*—*Mortgage.*—*Ultra Vires.*—*Estoppel.*—A corporation organized under the law of this State providing for the organization of life and accident insurance companies, has power to borrow money and secure its payment by mortgaging its real estate, and where it has done so and used the money and subsequently become insolvent, neither the corporation nor the policy-holders will be

heard to assert that the mortgage is void on the ground that the corporation had no power to engage in the transaction in which the borrowed money was used.

SAME.—*Lender's Knowledge of Use to be Made of Money.*—A mortgage executed by a corporation to secure money borrowed by it, to be used in a transaction in which it has no power to engage, may be enforced, if no statutory prohibition is involved, where the lender was not in complicity with the borrower in carrying out the *ultra vires* transaction, although he may have known of the purpose for which the money was obtained.

SAME.—*Estoppel to Deny Power to Contract.*—Where a contract has been executed and fully performed on the part of the corporation or of the person with whom it contracted, neither party will be permitted to assert that the contract was not within the power of the corporation.

From the Marion Superior Court.

*J. P. Baker, L. Wallace, Jr.,* and *J. P. Dunn, Jr.,* for appellants.

*A. Baker, E. Daniels, F. Winter* and *J. B. Elam,* for appellees.

MITCHELL, J.—This was an action by certain of the policyholders of the Franklin Life Insurance Company, the purpose of which was to have cancelled and declared void a mortgage executed by the directors of the above named corporation to the Northwestern Mutual Life Insurance Company.

The questions for decision arise on the complaint, which is in two paragraphs, both of which are in legal effect alike. It appears that the Franklin Life Insurance Company was organized in July, 1866, under the general law which provides for the organization of mutual life and accident insurance companies. Section 3763, R. S. 1881. The company was organized upon the life plan. · Its charter provided that the entire management and control of the affairs and business of the corporation should be confided to its board of directors, who were given full power over the affairs of the company. In August, 1881, the board of directors, having discovered that the business of the company had decreased

and become unprofitable, arfd that it was being conducted at a loss, adopted a resolution authorizing the executive officers to buy in all its outstanding paid-up policies, with the view of winding up the business of life insurance, and of changing from life to accident insurance.  It is averred that the change was made without the consent of the plaintiffs, who are and were policy-holders, and without any amendment of the articles of association, or the consent of the State.  In January, 1882, the board of directors again resolved to continue the scheme of retiring the company's life policies, and the executive officers were accordingly directed to buy in all outstanding policies of that description, on the most advantageous terms.  In executing these directions, $90,000, all the available assets of the company, was expended in purchasing policies, and it became necessary, in order to complete the purchases, to borrow money.  Accordingly a loan of $37,500 was negotiated with the Northwestern Mutual Life Insurance Company.  The money was obtained and used in purchasing policies.  As security for the loan, which was evidenced by a bond running five years with semi-annual interest, a mortgage was executed on the real estate and office buildings of the company, the mortgagee having knowledge of the purpose for which the money was obtained and used.  Subsequently the Franklin Life Insurance Company became insolvent and made a voluntary assignment.  At the time the assignment was made there remained outstanding about three hundred life policies, representing a surrender value of $75,000, while the assets of the company, after deducting the amount of the debt secured by the mortgage in controversy, aggregated something less than $18,-000.  It is alleged that the assignee recognized the mortgage in question as a valid obligation, and that he refused to take any steps to set it aside.  The plaintiffs, therefore, bring the suit as policy-holders, and ask that the mortgage be declared void, and that it be cancelled and the mortgagee restrained

from asserting any claim on account thereof, or on account of the money loaned.

On appellants' behalf it is contended that the facts stated in the complaint show that the money, to secure which the mortgage was given, was borrowed so as to enable the board of directors to buy up for the company its outstanding life policies, in an unauthorized and unequal manner, with a view to effect a change of the company's business from life to accident insurance ; that the corporation had neither the power to wind up its life insurance business by the method pursued, nor had it the power, under its articles of association, to engage in the business of accident insurance ; and that hence the loan from and transaction with the Northwestern Mutual Life Insurance Company were *ultra vires.*

The proposition advanced, that a corporation can not, without the consent of the shareholders, abandon the fundamental purpose for which it was organized and engage in transactions, or embark its capital in enterprises, other than those which come legitimately within the scope of its charter, is abundantly maintained. Green's Brice's *Ultra Vires,* 77. Accordingly, it is the established rule that a stockholder, or other person interested, who has not consented, may invoke the aid of a court of chancery to restrain the managing directory from engaging or continuing in an enterprise which involves a material change in the original purposes or powers of the corporation, and which is not in aid of its primary object. *Board, etc.,* v. *Lafayette, etc., R. R. Co.,* 50 Ind. 85 ; *McCray* v. *Junction R. R. Co.,* 9 Ind. 358 ; *Bradley* v. *Ballard,* 55 Ill. 413 ; 1 Morawetz Corp., sections 273, 274.

This rule is neither technical nor arbitrary, but has for its foundation the means of affording protection to stockholders who resort to it in good faith for the purpose of holding the corporation to the prosecution of its legitimate and proper business. *Holt* v. *Winfield Bank,* 25 Fed. Rep. 812.

The appellants, it may be well to remark, are not in a court

of equity, asking that the corporation in which they are interested as members and policy-holders be restrained from embarking in an enterprise foreign to its original purpose, or from winding up the corporate business. These are all matters of the past. The charter of the corporation has' been forfeited to the State, and its business is being wound up without objection from the plaintiffs, so far as appears. The only question here is, whether the plaintiffs, who in this proceeding occupy the place of the corporation, may now question the power of its directors, who were entrusted with the management of its affairs, to borrow the money and execute the bond and mortgage which they now seek to have cancelled and declared of no effect, after the corporation has received into its treasury and used the money which they were given to secure. The weight of modern authority supports the conclusion that private corporations, organized for pecuniary profit, may, like individuals, borrow money whenever the nature of their business renders it proper or expedient that they should do so, subject only to such express limitations as are imposed by their charters. The power to borrow carries with it, by implication, unless restrained by the charter, the power to secure the loan by .mortgage. Accordingly it may be regarded as settled, that where general authority is given a corporation to engage in business, and there are no special restraints in its charter, it takes the power as a natural person enjoys it, with all its incidents and accessories ; it may borrow money to attain its legitimate objects, precisely as an individual, and bind itself by any form of obligation not forbidden. *New England, etc., Ins. Co.* v. *Robinson,* 25 Ind. 536 ; *Jones* v. *Guaranty, etc., Co.,* 101 U. S. 622 ; *Reichwald* v. *Commercial Hotel Co.,* 106 Ill. 439 ; *Booth* v. *Robinson,* 55 Md. 419 ; *Hays* v. *Galion Gas Light Co.,* 29 Ohio St. 330 ; *Memphis, etc., R. R. Co.* v. *Dow,* 19 Fed. Rep. 388 ; Green's Brice's *Ultra Vires,* 223 ; 1 Morawetz Corp., sections 342, 343.

In the absence of any express or implied limitation upon

the power of the Franklin Life Insurance Company to borrow money, it might well be held, for anything that appears in the complaint, that the board of directors, in whom was vested broad and comprehensive powers in respect to the management of the business of the corporation, did not exceed its authority in making the loan for the purpose of buying in outstanding policies, if that seemed the best method to avert financial disaster. However this may be, since there was no statute prohibiting the company from purchasing its outstanding policies, or from borrowing money for that purpose, and the transaction was not intrinsically illegal or immoral, the bond and mortgage given to secure the loan of money to be used in taking up the policies were not void. The plaintiffs having come into a court of equity to avoid a transaction which at the most was only voidable, they must, in order to obtain any standing, offer to do equity. It is not equitable to ask a court of conscience to avoid a mortgage given to secure borrowed money without offering to return the money which has been received. Having received the full benefit of the contract, it would now be a glaring injustice to allow those representing the corporation to set it aside and retain the benefit by sustaining their contention that the loan was *ultra vires.* Especially as this doctrine only concerns the corporation in its relations with the State and with its stockholders, and is never entertained where it will injure innocent third persons. *Bissell* v. *Michigan Southern, etc., R. R. Co.,* 22 N. Y. 258.

Where a corporation makes a contract that is in excess of its chartered powers, it may well be that while the agreement remains wholly executory it can not be enforced. So long as the contract is unexecuted it does not estop the corporation, because the power of a corporation, like that of a person under a legal disability, can not be enlarged by the mere form of a contract which it had no capacity to make. *Miners' Ditch Co.* v. *Zellerbach,* 37 Cal. 543. The doctrine of *ultra vires* may be appealed to in such a case to re-

sist the enforcement of a contract. It would be carrying that doctrine to an unwarranted extent, however, to hold that a corporation might obtain the money of another, and, with the fruits of the contract in its treasury, interpose the defence of *ultra vires*, or, having used the money with the consent or acquiescence of its stockholders, ask that the lender be restrained from collecting it back, on the ground that the money was obtained in violation of the charter of the corporation. Like natural persons, corporations must be held to the observance of the recognized principles of common honesty and good faith, and these principles render the doctrine of *ultra vires* unavailing when its application would accomplish an unjust end, or result in the perpetration of a legal fraud. After a corporation has received the fruits which grow out of the performance of an act *ultra vires*, and the mischief has all been accomplished, it comes with an ill grace then to assert its want of power to do the act or make the contract, in order to escape the performance of an obligation it has assumed. The most that can be said in the present case is, that there was a defect of power to engage in the transaction in which the money borrowed was used. The power to borrow money was plenary, and subject to no restrictions. In such a case, although the lender may know that it is the purpose of the borrower to use the money in an irregular way, yet if the contract between the lender and borrower is not in violation of law, or declared void by statute, the money may be recovered, unless the lender was in some way implicated in furthering the borrower's design, or accessary to the prohibited or illegal act. *Sondheim* v. *Gilbert*, 117 Ind. 71; *Cummings* v. *Henry*, 10 Ind. 109; *Bickel* v. *Sheets*, 24 Ind. 1.

Wharton states the rule thus: "It is not enough that the party lending might have foreseen that the money would have been likely to have gone to an illegal object, or that the person borrowing was engaged in illegal enterprises. Nor will it be enough that there was an intention that the party

borrowing should illegally appropriate the loan. He must know that the borrower is purposing the specific illegal use, and must be implicated as a confederate in the transaction." Law of Contracts, sections 341, 343 ; *Thompson* v. *Lambert,* 44 Iowa, 239.

The conclusion which follows is, that even if it were conceded that the money was borrowed to be used in a transaction altogether beyond the power of the corporation, and that the lender knew the purpose for which it was to be used, since there is no statutory prohibition involved, and the lender was in no way in complicity with the borrower in carrying out the transaction in which the money was used, there exists no impediment against the enforcement of the contract.

As there was, at the utmost, merely a defect of power in the corporation to engage in the transaction in which the money was used, and no restriction whatever upon its power to make the loan and execute the securities here in question, neither the corporation nor the plaintiffs, who occupy its place, will be heard to assert that the transaction in which the money was borrowed was *ultra vires.* If, however, it were conceded that the borrowing of the money was a transaction beyond the chartered power of the corporation, the authorities fully justify the conclusion that it would not be heard to assert the invalidity of the transaction while it retained its fruits. The rule is now too thoroughly established to be longer open to question, that where a contract has been executed and fully performed on the part of the corporation, or of the party with whom it contracted, neither will be permitted to insist that the contract was not within the power of the corporation. *State Board, etc.,* v. *Citizens Street R. W. Co.,* 47 Ind. 407 ; *Louisville, etc., R. W. Co.* v. *Flanagan,* 113 Ind. 488 (3 Am. St. Rep. 674); *Chicago, etc., R. W. Co.* v. *Derkes,* 103 Ind. 520 ; *Pancoast* v. *Travelers Ins. Co.,* 79 Ind. 172 ; *Hitchcock* v. *Galveston,* 96 U. S. 341 ; *Railway Co.* v. *McCarthy,* 96 U. S. 258 ; *Brad-*

*ley* v. *Ballard, supra; Memphis, etc., R. R. Co.* v. *Dow, supra; Whitney Arms Co.* v. *Barlow,* 63 N. Y. 62.

"Corporations, like natural persons, have power and capacity to do wrong. They may, in their contracts and dealings, break over the restraints imposed upon them by their charters; and when they do so, their exemption from liability can not be claimed on the mere ground that they have no attributes or faculties which render it possible for them thus to act." *Bissell* v. *Michigan Southern, etc., R. R. Co., supra.*

The law never sustains the defence of *ultra vires* out of regard for the corporation. It does so only where the most persuasive considerations of public policy are involved. *Wright* v. *Pipe Line Co.,* 101 Pa. St. 204; *Oil Creek, etc., R. R. Co.* v. *Penn. Transp. Co.,* 83 Pa. St. 160; *Ottawa Northern Plank Road Co.* v. *Murray,* 15 Ill. 336.

There are some other points of minor importance discussed in the briefs, but they do not affect the merits of the controversy. The complaint did not state facts sufficient to constitute a cause of action.

The judgment is affirmed, with costs.

