# HUNTINGTON BREWING COMPANY *v.* MCGREW, TRUSTEE.

[No. 9,025. Filed May 11, 1916. Rehearing denied November 23, 1916. Transfer denied April 3, 1917.]

1. CORPORATIONS.—*Powers.*—*Ultra-Vires.*—Any act done or agreement made by a corporation, by and through its proper and duly authorized officers with an honest view of serving corporate ends in a substantial sense, which act is in itself lawful and not prohibited by charter or otherwise, will be considered within the corporate powers as against an after-claim of the corporation that such act is *ultra vires.* p. 278.

2. ·CORPORATIONS.—*Powers.*—*Ultra Vires.*—*Applicability.* — *Relations with Third Persons.*—The doctrine of *ultra vires* only concerns a corporation in its relations with the state and with its stockholders and is never entertained where it will injure innocent third persons. p. 282.

3. CORPORATIONS.—*Contracts.*—*Ultra Vires Contracts.*—The defense of *ultra vires* to the enforcement of a contract entered into by a corporation is sustained by the courts only when the most persuasive considerations of public policy are involved, and never out of regard for the corporation. p. 282.

4. CORPORATIONS.—*Contracts.*—*Ultra Vires Contracts.*—*Liability.*—Where a contract, otherwise legal and equitable and subject to no attack or infirmities other than that it was beyond the power of the corporation to make it, has been so far executed that the parties thereto cannot be placed in *statu quo*, and the corporation has received benefit from the performance by the other party, it will be held liable upon such contract. p. 282.

5. CORPORATIONS.—*Contracts.*—*Ultra Vires Contracts.*—*Estoppel to Claim.*—*Assent of Stockholders.*—A corporation engaged in the brewing business, the stock of which was owned by two men, with the exception of a share each held by 'their respective wives, the men being in active charge of the business of the corporation, is estopped from invoking the defense of *ultra vires* in an action on a note given for the unpaid balance on a sub·scription to a city fund for locating industries, where each of the men had full knowledge of, and consented to, the subscription, which was not binding unless a stipulated amount was raised, such amount having been fully subscribed and most of it collected and paid out for the location of factories. p. 283.

6. APPEAL.—*Harmless Error.*—*Admission and Exclusion of Evidence.*—Where an appeal must be affirmed on the controlling issues presented, alleged error in the admission of evidence on other issues is harmless. p. 285.

From Huntington Circuit Court; *James J. Moran,* Special Judge.

Action by Charles McGrew, trustee of the Huntington Factory Fund Association, against the Huntington Brewing Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*C. W. Watkins* and *C. A. Butler,* for appellant.
*Burdge H. Hurd* and *Lesh & Lesh,* for·appellee.

HOTTEL, J.—This is an appeal from a judgment in appellee's favor in an action brought by it on a note executed by appellant. The pleadings on which the case proceeded to trial were a complaint in one paragraph, a special answer in one paragraph, and a reply in two paragraphs. As no question is raised on the pleadings, it is sufficient to say concerning them that the special answer proceeds on the theory that appellant is an Indiana corporation, organized for the purpose of manufacturing and selling malt, malt liquors and ice, and to purchase and sell lands; that the note in suit was not given to obtain money or anything of value to be used by defendant in its business, but was to be used solely for the purpose of locating other factories in the city of Huntington, Indiana, and was *ultra vires* and void.

To this answer there were filed a general denial and also a special reply which proceeds on the theory that the note in suit was given pursuant to and in settlement of a written subscription made by appellant to a $50,000 factory fund to be used in locating factories in the city of Huntington, and that appellant is estopped from invoking the defense of *ultra vires* against the collection of said note, by reason of the fact that it received benefits under said agreement pursuant to which the note was given. Such reply also alleges facts showing a mutuality of interest and agreement between the respective subscribers to said subscription paper and that such subscription agreement had been so far executed by the respective parties thereto that it would be inequitable and unjust to such parties who have performed such agreement to permit appellant to now escape performance on its part.

On the issues thus tendered the trial court, pursuant to request, rendered a special finding of facts and stated its conclusions of law thereon. The court found in

substance: (1) That appellee is a corporation organized under the laws of Indiana to promote and extend the commercial and industrial interests of the city and citizens of Huntington, Indiana, by inducing factories and other enterprises to locate at or in said city. Said funds were collected and held by Charles McGrew, trustee, he having been appointed to succeed Julius Dick, the original trustee in said matter. (2) That appellant is an Indiana corporation organized to make and sell beer and ice and to sell real estate in furtherance of and incidental to its main business of making and selling beer, and has its brewery and principal place of business in Huntington. (3) Prior to May 6, 1907, representatives and agents of said factory fund association circulated a formal subscription among the citizens of Huntington to obtain donations to said fund, which subscription agreement, omitting signatures, was as follows:

"We, the undersigned, agree to pay the sums set opposite our names for a $50,000 Factory Fund, to be used in locating factories in the City of Huntington, Indiana, said fund to be paid to Julius Dick trustee of said fund for said purposes. Subscriptions not to be binding until the full amount of $50,000 shall have been subscribed and payments of amount subscribed shall be made as follows: Without relief from valuation or appraisement laws; 10 per cent. shall be paid as soon as the full amount of $50,000 is subscribed and notes for the balance of each subscription shall be executed for 10 per cent. of each subscription, payable semi-annually, without interest.

Name.                              Amount."

(4) That Henry W. Hoch was a director of said association, and, as such, actively participated in its business affairs and in the circulation of said subscription paper, and was then secretary and treasurer of appellant company and subscribed $2,000 for it. That the

amount of the subscriptions so obtained, *including the said subscription of appellant,* aggregated $50,000. (5) Said subscriptions were settled by the various subscribers giving their notes for the balance due on their subscriptions after deducting the cash payments made by them, and appellant settled its subscription after deducting its cash payment of $200 by executing and delivering to appellee the note herein sued on for $1,800, payable semi-annually in installments of $200 each, which is set out in the findings. (6) That appellant paid $200 on said note and that $200 is a reasonable attorney's fee. That the $200 was paid with full knowledge of all stockholders of the company without objection by any of them. (7) At the time appellant executed its note its capital stock then amounted to $50,000, all of which had been issued and was then owned by Hoch and Knipp in equal shares, their respective wives each formally holding one share to meet the requirements of the law. That appellant owns a large amount of real estate in Huntington and adjacent thereto, and has an artificial ice plant and has made and sold ice, but is not now engaged in such business. (8) That appellee collected from said subscriptions and notes given therefor about $40,000, and has paid out for the location of factories in said city $35,000, and has greatly extended the business interests of the city and its citizens and the population of said city has been increased 1,000 by reason of said business enterprises. (9) That appellant received a valuable consideration for the note.

The conclusions of law are: (1) That the law is with the appellee. (2) That the note sued on is a legal and binding obligation duly executed by appellant. (3) That appellee should recover judgment from appellant in the sum of $2,200 as principal, interest and attorney's fees without relief, etc., and its costs.

Appellant's motion for a *venire de novo* and for a new trial were each overruled and these rulings and the conclusions of law, *supra,* are assigned as error in this court. While numerous rulings of the trial court are presented by said several assigned errors, appellant in its brief says: "This was an action on a promissory note, in due form, executed and delivered to the appellee's predecessor in office, by the appellant calling for $1,800, on which $200 had been paid. Two questions were involved, the first as to the note being ultra vires the corporation, and the second, as to the receipt by appellant of benefits of such a nature as to work an estoppel. The plea of ultra vires was raised by appellant, defendant below, and the plea of estoppel is invoked by appellee. * * * The appeal in this case, as we desire to present it, involves the following questions: Had appellant the power to make the note sued upon? Is appellant estopped by reason of having received any benefits growing out of said contract? Is such a contract contrary to public policy? On the trial of the case error in the admission of evidence on those points depends largely upon viewpoint on the above questions."

We therefore go direct to such questions. (1) Under the facts found by the court was the execution of the note in suit *ultra vires*? The rule of strict construction of corporate authority as applied to some of the earlier cases which deny the right of a corporation to enter into any contract or do any act not specifically granted by its charter or necessary for the purpose of carrying into effect the powers so expressly granted, has been modified by the later cases and the rule now seems to be substantially as follows: Any act done or agreement made by a corporation, by and through its

1.    proper and duly authorized officers with an honest view of serving corporate ends in a substan-

tial sense which act is in itself lawful and not prohibited by charter or otherwise, will be considered within the corporate powers as against an after-claim of such corporation that such act is *ultra vires*. 29 Am. and Eng. Ency. Law (2d ed.) 47; *Winterfield* v. *Cream City Brewing Co.* (1897), 96 Wis. 239, 71 N. W. 101. Upon this subject it is said in 7 Am. and Eng. Ency. Law (2d ed.) 807: "It has often been held that it is not within the powers of a corporation to subscribe for the purpose of aiding other enterprises, even though it may tend to increase its own business; but on this point there is a direct conflict in the cases. Many courts have held that such power is to be implied whenever such a subscription is necessary, *or when it would be usual or proper for a natural person under the circumstances.*" See cases cited in note.

In *Wright* v. *Hughes* (1889), 119 Ind. 324, 328, 21 N. E. 907, 908, 12 Am. St. 412, our Supreme Court, in discussing this question, said: "It may be regarded as settled, that where general authority is given a corporation to engage in business, and there are no special restraints in its charter, it takes the power as a natural person enjoys it, with all its incidents and accessories; it may borrow money to attain its legitimate objects, precisely as an individual, and bind itself by any form of obligation not forbidden."

In the case of *Richelieu Hotel Co.* v. *International, etc., Encampment Co.* (1892), 140 Ill. 248, 29 N. E. 1044, 33 Am. St. 234, the Supreme Court of Illinois held that a subscription by such hotel company to a fund to establish a military encampment which would be likely to attract strangers, necessarily requiring hotel accommodations, was within the implied power of such corporation, and not *ultra vires,* and in the discussion of such question at page 263, said: "Power to carry on the hotel business necessarily carries with it, as an inci-

dent, the power to adopt and promote all reasonable expedients directly calculated to increase the number of patrons of the hotel, such as advertising, employing agents to solicit patronage, running omnibuses and other vehicles to convey guests to and from the hotel, and other similar expedients. Donations of money to enterprises calculated to bring to the city large numbers of visitors from abroad would seem to fall within the same reason. Perhaps no better practical confirmation of this view can be found than that furnished by this subscription paper, by which the proprietors of most of the leading hotels and restaurants of the city subscribed large sums of money to help secure the holding of the proposed encampment. It is scarcely to be presumed that these men were willing to give their money for the mere purpose of having a military encampment held. Such exhibition of itself was no more to them than to other members of the community. They doubtless subscribed upon business principles and from a business standpoint, and because they believed that by doing so they could best promote their own business enterprises. In view of the practical judgments of these men thus expressed, the courts will hardly undertake to say, that the objects of the subscription were so foreign to the business which the defendant was incorporated to carry on, as to call for an application of the doctrine of *ultra vires.*" As throwing light on this subject, see, also, *Central Lumber Co.* v. *Kelter* (1903), 201 Ill. 503, 66 N. E. 543; *B. S. Green Co.* v. *Blodgett* (1895), 159 Ill. 169, 42 N. E. 176, 50 Am. St. 146; *Vandall* v. *South San Francisco Dock Co.* (1870), 40 Cal. 83; *McGeorge* v. *Big Stone Gap Imp. Co.* (1893), 57 Fed. 262; *Fort Worth City Co.* v. *Smith Bridge Co.* (1893), 151 U. S. 294, 14 Sup. Ct. 339, 38 L. Ed. 167; *Louisville, etc., R. Co.* v. *Literary Society, etc.* (1891), 91 Ky. 395, 15 S. W. 1065; *New England*

*Fire, etc., Ins. Co.* v. *Robinson* (1865), 25 Ind. 536, 541, 542; *Mercantile Trust Co.* v. *Kiser* (1893), 91 Ga. 636, 18 S. E. 358; *Vanderveer* v. *Asbury Park, etc., Co.* (1897), 82 Fed. 355; 3 Thompson, Corp. (2d ed.) §§2109, 2116; *People* v. *Pullman Palace Car Co.* (1898), 175 Ill. 125, 51 N. E. 664, 64 L. R. A. 366, 385 (dissenting opinion).

The fund to which appellant subscribed and the note given pursuant thereto were to be used for a perfectly legitimate and lawful purpose. We are cited to no provision in the law under which appellant's articles of incorporation were granted and nothing in such articles themselves or in appellant's by-laws that prohibits or forbids such corporation from entering into an agreement of the character here involved. The subscription was not a gift to charity, but its purpose was to bring new factories and industrial plants to the city in which appellant's business was located and give new life and impetus to the industrial and commercial life of such city, and thereby add to its growth and population. To adopt the language above quoted from 7 Am. and Eng. Ency. of Law, "it would be usual (and) proper for a natural person under the circumstances" to contribute to said fund. Indeed the finding shows that in the instant case many natural persons did so contribute. The promotion and consummation of such scheme by raising a fund to be used for such purpose was a matter that might naturally and reasonably appeal to the business judgment of appellant's directors and officers, the same as to any individual who had business interests in said city. Either might have very well concluded that their business and the returns therefrom would be increased and their success therein made more certain by the consummation of such project, and appellant's officers and agents, having adopted such method of promoting the business of their corpor-

ation, the doctrine of *ultra vires,* under the authorities *supra,* will not be invoked by a court as an excuse for substituting its judgment in such matter for that of such directors and officers.

Assuming, however, that appellant in signing said subscription paper and in executing the note sued on acted outside of its corporate authority, is it estopped from so saying in this case? In the determination of this question it is important to keep in mind in whose favor and interest the doctrine of *ultra vires* is invoked, and the general principles which influence and control its application. Such doctrine is one which "only concerns the corporation in its relations with the State and with its stockholders and is never entertained where it will injure innocent third persons." *Wright* v. *Hughes, supra,* 329. The law never sustains such a defense "out of regard for the corporation. It does so only when the most persuasive considerations of public policy are involved." *Wright* v. *Hughes, supra; Seamless, etc., Mfg. Co.* v. *Monroe* (1914), 57 Ind. App. 136, 143, 106 N. E. 538, and cases cited. "Where a corporation makes a contract that is in excess of its chartered powers, it may well be that while the agreement remains *wholly executory* it cannot be enforced;" but corporations, like natural persons, "must be held to the observance of the recognized principles of common honesty and good faith, and these principles render the doctrine of *ultra vires* unavailing when its application would accomplish an unjust end, or result in the perpetration of a legal fraud;" and, where a contract, otherwise legal and equitable and subject to no attack or infirmity other than that it was beyond the power of the corporation to make it, has been so far executed that the parties thereto cannot be placed in *statu quo,* and the corporation has received

benefit from the performance of the other party or parties, it will be held liable upon such contract. *Wright* v. *Hughes, supra,* 330; *Flint, etc., Mfg. Co.* v. *Kerr, etc., Mfg. Co.* (1899), 24 Ind. App. 350, 356, 357, 56 N. E. 858; *Seamless, etc., Mfg. Co.* v. *Monroe, supra,* 144, and cases cited.

Measured by these fundamental rules governing its application, do the facts in this case warrant the court invoking the doctrine of *ultra vires?* We first

5. inquire whether there is "any persuasive considerations of public policy which require it." The fund to which appellant subscribed, and for which the note in suit was given, was to be used for an entirely proper and legitimate purpose, one that could in no way result in harm to the State, one that in no way injuriously affected the public morals, or could have any harmful or injurious effect on the public generally. It follows that public policy does not require the invoking of said doctrine. The only harm that could result from appellant's agreement, and note given pursuant thereto, would be the harm that might result to such corporation and the individual stockholders thereof, on account of the dissipation of the funds of the corporation resulting therefrom and, under the facts of this case, the stockholders, if they, as such, were resisting the payment of the note, would be in no better position to invoke said doctrine than the corporation, because the finding shows that the subscription was made and the note executed and payment made thereon with their knowledge and consent. Indeed, there were but four stockholders, viz., Hoch, Knipp and their wives, the latter, according to the findings, each "formally holding one share to meet the requirements of the law." Hoch and Knipp each had an equal number of shares and were in active charge of the business of the corporation and each had full knowledge of and consented to said

subscription, Hoch being one of the directors in the factory fund association who actively participated in the business affairs of said association and in the circulation of said subscription paper. The finding further shows that said subscription agreement contained a provision to the effect that the subscriptions "were not to be binding until the full amount of $50,000 shall have been subscribed;" that such amount was subscribed; that $40,000 thereof had been collected, and $35,000 paid out for the location of factories; that on account of the location of such factories the business interests of the city have been extended and the population increased by at least 1,000, and that appellant received a valuable consideration for the note.

This last finding is objected to as being a conclusion and not within the issues. It is not necessary to enter into any discussion of this contention. For the purposes of the question presented this finding may be ignored and the facts found will still be sufficient to show that there was a mutuality of promise and obligation between the respective subscribers to said subscription agreement; that the fund subscribed has been in a great measure collected and used for the purposes contemplated when subscribed; that such agreement has been so far executed that the parties thereto could not be placed in *statu quo;* that appellant in common with other subscribers has received the common benefit contemplated when such subscription was made, viz., the location of new factories and the increased population therefrom together with any impetus or increase to business generally resulting therefrom; that it would be inequitable and unjust to the other subscribers to permit appellant to avoid its obligation.

It follows that, measured by any or all of the rules above indicated, as governing the application of said doctrine, appellant is in no position to have it invoked

to relieve it from the payment of the note sued on. Our conclusion therefore is that upon each of the questions above indicated by appellant, as the questions desired to be presented by the appeal, the decision of the trial court is supported both in law and equity.

Appellant, in its motion for new trial, assigned as grounds therefor the admission and exclusion of certain evidence. In most instances such questions 6. are not properly presented by the record, and in any event our disposition of the controlling questions presented by the appeal, as appellant in effect concedes, renders unavailing any error in the admission of the evidence objected to, because the only controlling influence, if any, which such evidence could have had would have been an influence on the findings which we ignored in our determination of said questions. The judgment below is therefore affirmed. .

Moran, J., not participating.

NOTE.—Reported in 112 N. E. 534. Corporations: *ultra vires* acts, estoppel to plead as defense, see 10 Cyc 1156.